In re SEAWAY INTERNATIONAL TRANSPORT, INC., and Halcon International Corporation, Debtors.

Alan L. Goldberg, Chapter 7 Trustee, Plaintiff,

v.

Countrywide Home Loans, Inc., Defendant.

Bankruptcy Nos. 03–41181–BKC–LMI, 03–41182–BKC–LMI. Adversary No. 05–1426–BKC–LMI–A.

United States Bankruptcy Court, S.D. Florida.

March 8, 2006.

Jason E. Slatkin, Slatkin & Reynolds, P.A., Fort Lauderdale, FL, for Plaintiff.

Stuart M. Gold, Sax, Willinger & Gold, Miami Lakes, FL, for Defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

The trustee in these jointly administered corporate cases has filed this action to avoid a series of transfers made to the defendant in the years prior to the bankruptcy filing. The debtors each filed bankruptcy on October 15, 2003. The trustee argues that each debtor made a series of fraudulent transfers to the defendant over the course of the preceding four years. According to the trustee, Seaway made transfers totaling $6,574.98 within the four-year period. Halcon made $1,689.98 in transfers within the year prior to bankruptcy, and a total of $14,025.94 in transfers over the course of the four years prior to the bankruptcy.

The trustee's claims arise under 11 U.S.C. §§ 544 and 548. Under 11 U.S.C. § 548, a trustee may avoid a transfer as fraudulent if the debtor did not receive "reasonably equivalent value" for the transfer. The statute of limitations under § 548 is restricted to the year prior to the filing date. Under § 544, however, the trustee may bring an action to avoid any transfer of an interest of the debtor in property which is "voidable by any actual unsecured creditor under state law." *See Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide),* 139 F.3d 574,

576–77 (7th Cir.1998). Consequently, the trustee may utilize the state fraudulent conveyance statutes, which have a four-year statute of limitations. Further, the state fraudulent transfer provisions are otherwise identical to those found in the bankruptcy code, and the trustee's claims under both sections may be analyzed simultaneously. *See Stillwater Nat'l Bank & Trust Co. v. Kirtley (In re Solomon),* 300 B.R. 57 (Bankr.N.D.Okla.2003); *Levit v. Spatz (In re Spatz),* 222 B.R. 157 (N.D.Ill.1998).

Under § 548(a)(1)(B) and Fla. Stat. § 726.105(1)(b), the plaintiff must prove that the debtors did not receive "reasonably equivalent value" in exchange for the transferred property. What constitutes "reasonable value" for purposes of the fraudulent transfer statutes is not specifically defined. In general, courts have examined such factors as the good faith of the parties, the disparity between the fair value of the property and what the debtor actually received, and whether the transaction was at arm's length. *See Heritage Bank v. Steinberg (In re Grabill Corp.),* 121 B.R. 983, 994 (Bankr.N.D.Ill.1990).

The facts of the case are relatively simple. The creditor holds the mortgage on the home of Roger Halphen, the principal owner of both debtor corporations. The transfers the trustee seeks to recover represent mortgage payments made by the companies. Neither company was obligated on the mortgage debt. Consequently, the trustee contends that the debtors did not receive "reasonably equivalent value" for the payments made to the creditor.

As a general rule of fraudulent transfer law, a debtor's payment on behalf of a third party typically remains avoidable in bankruptcy unless there was a clear benefit (or "value") to the debtor. In the case of *In re Rodriguez,* 895 F.2d 725

(11th Cir.1990), the Eleventh Circuit ruled that the transfers made by a corporate debtor on an obligation of a subsidiary company could be avoided because the debtor was not legally obligated to pay the debt. The court stated:

> The purpose of voiding transfers unsupported by "reasonably equivalent value" is to protect creditors against the depletion of a bankrupt's estate ... Therefore, this provision does not authorize voiding a transfer which "confers an economic benefit upon the debtor," either directly or indirectly .... In such a situation, "the debtor's net worth has been preserved," and the interests of the creditors will not have been injured by the transfer.

*Id.* at 727. Likewise, in *Schafer v. Las Vegas Hilton Corp. (In re Video Depot)*, 127 F.3d 1195 (9th Cir.1997), the court concluded that a corporate debtor's payments of the principal owner's gambling debt was not supported by "reasonably equivalent value."

■ The trustee argues that when the debtors in the present case made mortgage payments on Halphen's home, they did not receive any more value than the debtors in cases such as *Rodriguez* or *Schafer*. In response, the defendant notes that Halphen was the sole officer, director, and shareholder of both debtors. As the plaintiff's own accounting expert testified, neither Halcon nor Seaway reported any officer compensation for tax purposes in 2000, 2001, or 2002. As Halphen did not draw a salary from either company, the creditor suggests that the mortgage payments were part of a "pattern of compensation." Essentially, the creditor's argument is that rather than pay Halphen a salary, the companies simply paid his mortgage expenses. As such, the creditor argues that the debtors did in fact receive a benefit, in the form of Halphen's services, in exchange for the transfers.

Clearly, it seems that Halphen's business practice was to pay his mortgage from the corporate accounts. As the trustee's expert notes, the tax records of the debtors do not specifically categorize these payments as compensation. However, those records also reflect no compensation whatsoever to Halphen, who it appears was responsible for generating the entirety of the debtors' assets. Halphen's testimony was that he made the mortgage payments from his corporate accounts simply as a matter of convenience, as it saved him time. He stated that it was easier for him to simply write a check from the corporate account than it was to pay himself and then write a check to the defendant. He indicated that his accountant never told him not to do this, and he characterized the payments as a form of "distribution" to him from the company.

■ In *Rodriguez*, the court noted that fraudulent transfer statutes cannot be utilized to void a transfer which "confers an economic benefit upon the debtor," be it directly or indirectly. 895 F.2d at 727. Here, it is clear that the sole shareholder and director of these debtors took no direct compensation from either company, preferring instead to simply pay his mortgage through the corporate accounts. While not appropriate on a strict accounting level, the court must remember the Eleventh Circuit's observation in *Rodriguez* that the net worth of a debtor who receives an indirect benefit may not have been adversely affected by a transfer of assets. Halphen was a corporate principal who took no other compensation from these debtors and who made modest payments on his home mortgage through the corporate accounts. As he noted in his testimony, he could have easily compensated himself these same amounts and then

paid the defendant himself; the net result would have been the same, and would not have affected the debtors' relationships with their creditors.

Accordingly, the Court finds that the transfers in question constituted a pattern of compensation that indirectly benefitted the debtors. In exchange for these relatively small payments, the debtors received Halphen's services. Given Halphen's integral role in the operation of both debtors, Halphen's services clearly constituted reasonably equivalent value for the mortgage payments in question.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.